IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JONATHAN ARN,
    Plaintiff,

v.                                                  Civil Action No. 3:21cv763

JEFFREY WHITEHEAD,
    Defendant.

## MEMORANDUM OPINION

Jonathan Arn, a former federal inmate proceeding *pro se*, filed this *Bivens*[1] action.[2] The action proceeds on Arn's Amended Complaint ("Complaint," ECF No. 41).[3] In his Complaint, Arn contends that Defendant Whitehead used excessive force against his person in violation of the of his rights under the Eighth Amendment.[4] Defendant Whitehead has moved for summary judgment. Arn has responded. For the reasons set forth below, the Motion for Summary Judgment, (ECF No. 32), will be DENIED.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Arn was incarcerated at the time he filed this suit. On April 14, 2022, Arn informed the Court by letter that he would be released in June 2022 and provided an updated mailing address. (ECF No. 37.)

[3] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling and capitalization in the quotations from the parties' submissions.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing "affidavits" or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448) (emphasis omitted). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Defendant Whitehead submitted his sworn declaration. (ECF No. 33-1.) Arn responded by submitting his own declaration. (ECF No. 35.)

In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Arn.

## II. SUMMARY OF RELEVANT FACTS

At all times relevant to this suit, Arn "was a convicted and sentenced person." (ECF No. 41, at 11.) On October 16, 2020, Defendant Whitehead was employed as a United States Marshals Service Detention Employment Officer. (ECF No. 33-1 ¶ 3.) On that date, Defendant Whitehead was responsible for transporting Arn to the Pamunkey Regional Jail in Hanover County (the "Jail"). (*Id.* ¶ 4.) During the van ride to the Jail, Defendant Whitehead asked Arn "several times to keep his mask on covering his nose and mouth." (*Id.* ¶ 5.)[5] Nevertheless, Arn allowed his mask to fall off his nose and mouth. (*Id.*) Arn insists that he only intentionally removed his mask when he began vomiting. (ECF No. 35 ¶ 6.)[6] After he vomited, however, Arn refused Defendant Whitehead's "requests to properly secure the mask on his face." (ECF No. 33-1 ¶ 9.)

When they arrived at Pamunkey Regional Jail, Defendant Whitehead

> once again, asked [Arn] to pull his mask up so that it covered his nose and mouth. [Arn] responded that he didn't have to listen to [Defendant Whitehead] and do what [Defendant Whitehead] told him to do. At that point, [Defendant Whitehead] put [his] forearm across [Arn's] chest and pulled [Arn's] mask up so that it would cover his nose and mouth.

---

[5] Defendant Whitehead's insistence that Arn properly use of a facemask was prompted by his concern for the health of Arn, other inmates, and the officers transporting Arn. (*Id.* ¶¶ 7, 8.)

[6] Arn swears that he became sick because of Defendant Whitehead's erratic driving. (*Id.* ¶ 4; *see also* ECF No. 41 ¶ 8.)

3

(*Id.* ¶ 10.) When Defendant Whitehead tried to pull Arn's "mask up over his nose, he was resisting and was turning his head. While this may have appeared as if [Defendant Whitehead] was rubbing his mask in his face," Defendant Whitehead insists that he did not do so. (*Id.* ¶ 12.)

During the van ride and in his subsequent encounter with Defendant Whitehead, Arn "was shackled at the ankles, had waist chains on, was wearing handcuffs in front . . ., and had those handcuffs encased in a blackbox that was attached to [his] waist chains." (ECF No. 35 ¶ 7.)

### A. Defendant Whitehead's Version of Events at the Jail

After Arn entered the booking area of the Jail, Defendant Whitehead asked Arn several times to come out to the sallyport to clean his vomit out of the van. (ECF No. 33-1 ¶ 14.) Arn refused. (*Id.*)

> At that point, [Defendant Whitehead] walked over to [Arn] and grabbed his arm to walk him out. He pulled away -- saying that [Defendant Whitehead] was "assaulting" him -- at which point [Defendant Whitehead] got behind him to walk him out. As [Defendant Whitehead] was walking him forward, [Arn] was pushing back in resistance with his arms in the air. [Defendant Whitehead] was not dragging him across the floor. Both of his feet were clearly on the ground.

(*Id.*) Defendant Whitehead insists "[t]hat at no time did [he] choke or assault Inmate Arn . . . ." (*Id.* ¶ 17.)

### B. Arn's Version of Events at the Jail

Arn swears,

> After the van ride, but before being processed into the Jail, Defendant Whitehead verbally assaulted me, grabbed me by the throat, slammed my head into the van, and slapped me. I did not resist and gave no indication that I posed a threat to any person. I followed all orders given to me by Defendant Whitehead and Jail staff.

(ECF No. 35 ¶ 9.) Arn asserts that he "had scars and marks following the incident" and felt as though his "throat was swollen and bruised." (*Id.* ¶ 10.)

## III. ANALYSIS

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding relative to the subjective component. *See id.* With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). Regarding the subjective component, the inmate must demonstrate "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

The Supreme Court has identified several "factors to assist courts in assessing whether an officer has acted with wantonness." *Iko*, 535 F.3d at 239 (internal quotation marks omitted). These include:

5

> (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'

*Id.* (quoting *Whitley*, 475 U.S. at 321). Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry. *Wilkins*, 559 U.S. at 37. The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." *Id.* (citation omitted) (internal quotation marks omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (citing *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985)).

Arn insists that after being choked, his throat was swollen and bruised. Additionally, Arn contends that he had scars from having his head slammed into the van. These circumstances suggest that the amount of force employed was more than nontrivial and is sufficient to satisfy the objective component of his excessive force claim. *See Wilkins*, 559 U.S. at 39. Furthermore, according to Arn's account, he was compliant with Defendant Whitehead's directions and no need for the application of any force existed. Further, Arn was secured in handcuffs and leg restraints and therefore was only a limited threat to the security of the Jail or other officers. Nevertheless, in a fit of anger, Defendant Whitehead, grabbed Arn by the throat, slammed his head into the van, and slapped him. Based on these facts, a rational jury could conclude that that the force used against Arn was done maliciously and sadistically merely to cause harm, rather than a good faith effort to restore discipline. Accordingly, the Motion for Summary Judgment will be DENIED.

## IV. CONCLUSION

The Motion for Summary Judgment, (ECF No. 32), will be DENIED. The matter will be REFERRED to the Honorable Mark R. Colombell, United States Magistrate Judge for a settlement conference. Arn's letter motion to set the matter for trial, (ECF No. 39), will be DENIED WITHOUT PREJUDICE.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 3 ~~October~~ November 2022
Richmond, Virginia

/s/ _____